**United States District Court District of Arizona – Phoenix Division**

**Sandra Day O'Connor U.S. Courthouse, Suite 130**

**401 W Washington St, SPC 1, Phoenix AZ 85003-2118**

Jon Saltzman

P.O. Box 3737                              **No. Case CV 25 00020-PHX-SPL**

Wickenburg, AZ, 85358

jonsaltzman@msn.com                **OBJECTION TO MOTION TO DISMISS**

Plaintiff                                        **THIRD AMENDED COMPLAINT**

Vs

United States Department of the Interior, *et al.*,

Defendants

✓ FILED ___ LODGED
___ RECEIVED ___ COPY

SEP 0 2 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**1        Objection to Motion to Dismiss Third Amended Complaint**

To avoid dismissal for failure to state a claim upon relief may be granted, the claim must contain facts sufficient to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 566 U.S. 662 (2009) (quoting Bell Atl. Corp. v Twombly, 550 U.S. 544, 570 (2007)). To determine whether a complaint states a plausible claim for relief, a court must engage in a context-specific analysis and draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. In considering a motion the court must accept as true the complaints undisputed factual allegations and should construe them in a light most favorable to the plaintiff. Cambridge v. United States 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing Papasan v. Allain, 478 U.S.265, 283(1986) Gould, Inc. v. United States 935 F.2d 1271, 1274 (Fed. Cir. 1991) In addition, when considering a motion to dismiss a pro se complaint, the court holds the pleading to a less stringent standards than

formal pleading drafted by lawyers." Johnson v United States, 411 F. App'x. 303, 305 (Fed. Cir. 2010 (quoting Haines v Kerner, 404 U.S. 519, 520 (1972)

**2**              **MEMORANDUM and LEGAL**

The Court has jurisdiction thru Administrative Act 5 U.S.C. 701-706 per US Court of Appeals for the Federal Circuit Case 24-1785, January 23, 2025. All Saltzman subject 70 claims had a valuable mineral deposit. BLM personnel made frequent inspections. Once a valuable mineral deposit has been located, the unpatented mining claim "is a property right in the full sense, unaffected by the fact that the paramount  title to the land is in the United States." Union Oil Co of Cal  v. Smith 249 U.S. 337, 349, 39 S. Ct 308, 63 L. Ed. 635 (1919); Skaw v. United States, 13 Cl. Ct. at 29 (declaring claims "real property in the highest sense.") This constitutes a property interest. See; Cook v United States, 37Fed. Cl. 435 (1997) (Holding that the plaintiff possessed a vested right to receive a mineral patent for any valid mining claims). Cook v United States, 42 Fed. Cl 788 (1999) (holding that the plaintiffs were entitled to just compensation for the taking of patent rights) "which is within the protection of the Fifth Amendment's prohibition against the taking of private property for public use without compensation." Skaw v United States, 740 F. 2d 932, 936 Fed. Cir 1984. In early 2000 years and forward BLM mining claim business was very slow.

Gold was well under $350/oz and below the cost of production. BLM had a new promotion. 8 locators could locate a 160-acre mining claim with one claim name and one claim fee and claim could be transferred to one person. The investment was about $15 or so per locator. The 160-acre claims could be sold for thousands of dollars as gold was rapidly climbing in price. Today gold is over $3,400/oz. BLM subsequently in response made a huge fortune on the sheer new volume of placer mining claim business with BLM fee charges. Some Locators filed with BLM in batches up to 50 or more claims. Phoenix BLM personnel were overrun with the sheer volume of filing, recording and transferring placer claims and did a very poor job, creating errors, and missed recording correctly. The new statue Consolidated Appropriation Act 2012 Public Law 112-74 (125 Stat. 1047, and Fr44155-44158 (2012) **(ACT 2012)** came

"taking" 140 acres of each 160-acre placer mining claim on September 1, 2012. The boom went bust and Phoenix BLM personnel had filing errors, lost papers began to show up. After Saltzman claim acreage was taken by the **ACT 2012,** BLM about 3 years later without the BLM required notice and opportunity during the entire life of the subject claims, declared all Saltzman subject 70 claims invalid because of a locator issue. BLM **failed to notify** Saltzman or previous owners or locators per required by various regulations of 43 CFR. That BLM issue would have been easily corrected by BLM required notice and opportunity per 43 CFR regulations.  BLM'S **failure** of **notification** would be a great benefit for BLM to allow ruling claims **invalid** later if needed.

**3        There are Two Types of BLM Validities---Valid 1 and Valid 2**

BLM mining claims have two different types of validity that most fail to recognize. **Valid 1,** the paperwork, location, locator issues. These BLM issues should be corrected by BLM notice before the locator's first annual payment and before the locator's first transfer of the claims. **Valid 1** type issues are curable with **43 CFR 3830.94 (a)(1)** regulations of BLM Notice and Opportunity. See: **43 CFR 3833.21(2)** There are omissions or other defects in the original notice or certificate of location that you need to correct or clarify. **Filing defects are curable**.

The new owner is well assured BLM registered mining claim has no issues. If there are any claim issues BLM is **required to notify** the current owner and give 30 days to cure the issue by various 43 CFR rules. If BLM fails to do this, it greatly **benefits** BLM. It gives BLM the opportunity to declare the claim invalid through their mistake or error in a "taking case" sometime in the future like the Saltzman subject claims. This can result in BLM keeping a flaw or a scheme in the miners' claim. Later the BLM can **benefit** from the BLM kept flaw in the claim. Thus, BLM can rule a claim is invalid and therefore is not subject for a 5th amendment taking of personal property or compensation for taking the claim acreage for a new Federal "Taking" ACT **2012** or for the new Vulture Mountain Cooperative Recreation Area **(Vulture Park)** on Saltzman's subject claims. BLM also **failed to notify** Saltzman that Vulture Park was on his subject claims per **43 CFR 3833.32 (d), n**otification of any action.  Any BLM claim locator issue should have been

3

corrected by BLM notice in the year the claims were located before the first annual fee is due and before the transfer from the locators to the new owner.  BLM waited up to over 10 years to indicate that the Saltzman claims are not valid because of the locator issue that BLM notice should have corrected the locator issue with 43 CFR Notice and Opportunity the first few months of claim location date or later with the subsequent owners with various 43 CFR required notice and opportunity.  Saltzman 70 subject claims case, BLM never gave no notice and opportunity. BLM declared subject claims invalid so no Constitutional 5th Amendment taking applies. BLM invalid decision was not lawful. This Court has authority to reverse BLM invalid claim decision.

**Valid 2** is the actual BLM mineral test, simply digging until the minerals run out. 16 mineral tests sites per 160-acre claim-a-test every 10 acres. This determines the mineral Gold and Silver values contained in the claims.  Phoenix office in 2010 the cost to test a 160-acre claim was approximately $85,000 See: Otani Case IBLA 2010-142. Cost could be in 2025 over $100,000 for each for the 70 subject claims, totaling $7,000,000 ($7 million). This is clearly why Phoenix BLM tried to **benefit** from their own negligence or intentional fault by not notifying the locators, previous owners and Saltzman of any claim issue in the 70 subject claims case throughout the life of the claims through September 1, 2012. Phoenix BLM act of no notification and opportunity seems to be keeping a "flaw" in the Saltzman claims so the claims can be taken without compensation later for a new taking statute ACT 2012 or the Vulture Mountain Park to be on his subject claims.  Phoenix BLM personnel visiting Saltzman claim sites well knew Saltzman was working on a very large mining project. He had a BLM Plan of Operation pending which could eventually become one of the largest Gold and Silver mine operations in the United States. The mining operation, environmentally friendly, could produce the Gold and Silver metal for free with the income from the highly sellable by-product sand, gravel and rock within the growing demand in the Phoenix area.  Thus, BLM can **benefit** from their no notice error by invalidating the subject claims years later to avoid the high cost of determining **Valid 2** and avoid paying for the Gold and Silver values contained in each of the 70 subject claims, 11,200 acres total.

This is far greater pay amount than just the cost to test the claims. Historically this very rarely done as BLM/DOJ/CFC etal settles the mining claim cases. Phoenix BLM inspectors told Saltzman the BLM would not test his claims as they were located in a well proven area including Arizona's largest, most famous gold mine, the Vulture Mine.

**4    Only 3 reasons mining claim cannot be cured by BLM Notice and Opportunity.**

See:  **43 CFR 3830.91(a)** You will forfeit your mining claim if you **fail** to---

**(1)** Record a mining claim within 90 days after you locate it;

**(2)** Pay the location fee or initial maintenance fee within 90 days after you locate it;

**(3)** Pay the annual maintenance fee on or before the due date.

(The above regulation would **nullify** the BLM/IBLA invalid Saltzman claim decision)

**5        Reasons a mining claim issue is curable**

**43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM.

**43 CFR 3833.32(d)** BLM will notify the claimant of record with BLM of **any action** regarding a mining claim or site.

BLM **Failed** to follow their **43 CFR regulations** and **never Notified** Saltzman the registered owner or the previous owners or the original locators while they owned the claims. BLM denied Saltzman Due Process.  Case reasons follows.

**See:** Topaz Beryllium Co.  v  United States 649 F2d 775 (10th Cir. 1981) states:  "……. Even **defective filings** put the Secretary on notice of a claim, and we hold that once on notice, the Secretary cannot deem a claim abandoned merely because the supplemental filings required only by 3833 and not by statute are not made. This is also the Secretary's view; failure to file the supplementary information is treated by the Secretary as a **curable defect**."

**See:** Add-Ventures, Ltd. IBLA 85-694/95 IBLA 44, which cites an Order in Topaz Beryllium: 649 F.2d 775 (10th Cir. 1981): "The Department has consistently held that failure to file the supplemental decision is treated by the Department as a **curable**

**defect**. A claimant who fails to file the Supplemental information is notified and given 30 days in which to cure defect. If the defect is not cured the filing will be rejected by an appealable decision.

**6** **Response to Defendants Motion to Dismiss by page number and line numbers**

page 2 Ln 1 -- Statute of limitations Civil 5 years to bring up invalid procedure see later in this filing Statute of Limit is covered on page 9.

**7** page 5 Ln 3-10 Mining claims may be sold, transferred, mortgaged and inherited. This is why BLM checks and approved the **transfer** of a mining claim. The new owner is assured there is no issue existing with the mining claim. BLM cannot accept money on an invalid claim. The new owner can now borrow money on the BLM registered mining claim using the claim as security. How can creditors react for BLM indicating the mining claim have no validity or security years after they made the loan? BLM, if uncontested, can fail to give the required notice and opportunity for the claim owner. BLM/IBLA decision is completely unchecked like Saltzman's subject claims without some intervention of a U.S. Federal District Court.

**8** page 6 Ln 7-13 BLM Investigation------

Any issues at that time would be due to complete BLM negligence or BLM fault as when the claims were transferred to a new owner and the first annual payment was made the locators no longer own the claim and no longer have standing. BLM cannot bring up claim issue **secretly** without a **notice and opportunity** with 43 CFR regulations to the new current claim owner. Saltzman was never notified and opportunity by BLM of any BLM issues to any of his subject claims nor were the previous owners while they owned them. BLM failure to notify per CFR regulations. BLM was arbitrary and capricious.

See: **43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM.

See: **43 CFR 3833.32(d)** BLM will notify the claimant of record with BLM of any action regarding a mining claim or site. Note, no notice means the subject claim is **Valid 1**.

6

9    page 8 Ln 2-6   BLM notified Saltzman of change in the maintenance fee statute. **This was the first BLM notice, first issue in the entire life of the 70 subject claims.** The subject claims were BLM valid by **Valid 1** at that time or BLM would not have sent Saltzman notice and opportunity per 43 CFR regulations of the increased fee bill of nearly $101,000 for his subject claims resulting in an 800 percent fee increase on those **Valid 1** claims. BLM certified latter indicates **no other issues** with the subject claims. **(EX 1)** They are **Valid 1**. Even if Saltzman continued to pay the new annual fees for 10 years, he would never be able to mine as his subject claims are now in the "New Vulture Park." All Saltzman's investment and work of 25,000 hours developing the subject claims for the Plan of Operation over the years is down the drain. BLM decision years later not a single claim of 70 claims 11,200 acres of BLM registered subject claims are valid by **Valid 1**. That reflects 100 percent on the Phoenix BLM faulty or intentional claim handling procedures with Saltzman's BLM registered subject claims. The subject claims were filed with Phoenix BLM in 90 days of location; thus any issues could be cured with BLM notice and opportunity. Saltzman in good faith acquired BLM registered mining claims. Saltzman expected the Government agency, BLM/IBLA to handle the subjects claims in good faith too. Either way, it has nothing to do with Saltzman, yet he is the one who loses everything. BLM did well, all the claim fees collected over the years since the subject claims location dates with no apparent responsibility and accountability. If the claims were not valid by **Valid 1** type BLM would not have notified Saltzman of the BLM fee increase. **(EX 1)** No other subject claim issues were in the BLM certified letter of notice and opportunity. The subject claims were valid by **Valid 1.**

10        page 9 Ln 3-8 Aug 19 2020 IBLA affirmed voidance decision on 3 claims. BLM/IBLA was in gross blunder. BLM waited from 2006 until August 2020, 4 years later for BLM to claim they didn't get some paper in 2006 and then forfeited the 3 claims. This was BLM error of no notice for 4 years. See:**43 CFR 3833.32(d)** BLM will notify the claimant of record with BLM of any action regarding a mining claim or site. BLM never did. BLM **never** gave Saltzman any notice whatsoever. See: **43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid

a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM. This clearly illustrates BLM **no notifications** with Saltzman's claims. This documents the BLM **failure** to notify Saltzman subject claims claim per 43 CFR regulations. Shows the Phoenix BLM faulty record keeping issues with Saltzman's claims. Saltzman lost the 3 claims, approximately $3,000 value each plus the 4 years BLM payments approximately $10,000 total loss for Saltzman plus he lost all the precious metals gold and silver the claim contained. It's **Very Puzzling** that 3 claims out of 73 claims were invalid but they had the BLM **failure to notify issue**. It does show Phoenix BLM was closely looking at Saltzman's claims. A reasonable person could conclude that these 3 claims were a **trial run** for the BLM **no notice issue**. Saltzman lost claims, but didn't contest the 3 claims because of time and costs as he did have 70 claims valid.  IBLA Court decision, 70 subject claims are good and sent back to BLM so claim mineral testing could begin.  Just 2 years later almost to the day, the new **ACT 2012** took the 70 subject claims acreage, and the new **Vulture Park** was announced with map including the subject claims. Saltzman now will never mine his claim acreage's.

**11**      Page 9  Ln 3-26 IBLM **vacated** 2020 decision and affirmed voidance BLM/IBLA **reversed** their previous decision and now the 70 subject claims are invalid just like the earlier 3 claims. BLM never notified the previous owners and last owner Saltzman of any claim issues until after the taking ACT 2012, Sept 1, 2012.  This is becoming a **no notice pattern** of Phoenix BLM with Saltzman subject claims. BLM/IBLA decision was unlawful.

**Only 3 reasons a mining claim cannot be cured with BLM Notice and Opportunity.**

**43 CFR 3830.91(a)** You will forfeit your mining claim if you **fail** to---

**(1)** Record a mining claim within 90 days after you locate it;

**(2)** Pay the location fee or initial maintenance fee within 90 days after you locate it;

**(3)** Pay the annual maintenance fee on or before the due date.

8

See: **43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM. See:**43 CFR 3833.21 (2)** You may amend, if there are omissions or other defects in the original notice or certificate of location that you need to correct or clarify. **Filing defects are curable.**

12    Page 10 Ln 16-23 **IBLA rejected----The BLM** was **required** to **notify and give opportunity** for Saltzman. The IBLA did a **shameful blunder** with their **rejection.** That IBLA rejection itself should **reverse** the BLM/IBLA invalid decision to 70 subject claims are valid.  The subject mining claims were filed at the Phoenix BLM in 90 days of location, **they are curable.** The IBLA court knew they were wrong but obviously ruled claims invalid to avoid the expensive testing of the Saltzman subject claims. IBLA invalid decision was to the detriment of Saltzman, arbitrary and capricious. BLM/IBLA decision of invalid, denied Saltzman of his 5th Amendment Constitutional rights of compensation of "taking" his private property. See: Only 3 reasons mining claim cannot be cured with BLM Notice and Opportunity.  **43 CFR 3830.91(a)** You will forfeit your mining claim if you **fail** to---**(1)** Record a mining claim within 90 days after you locate it; **(2)** Pay the location fee or initial maintenance fee within 90 days after you locate it; **(3)** Pay the annual maintenance fee on or before the due date. See:**43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective, It requires BLM certified letter with notice and cure.

BLM **Failed to follow their required 43 CFR regulations** and never Notified Saltzman the registered owner. BLM denied Saltzman Due Process.  A filing defect is curable if the regulations require the missing information.  The claimant must submit missing documentation within the time allowed after receiving BLM notice that the filing was defective. The response time is usually 30 days from the claimant receipt of the notice. See: **43 CFR 3833.21(2)** Can amend if there are omissions or other defects in the original notice or certificate of location that you need to correct or clarify. **Filing defects are curable.**

**13**    Page 13 Ln 18-28 Page 14 Ln 1-3 Statute of limitations

**Statute of Limitation applies to the subject claims, 28 U.S.C. 2462 forfeiture-penalty-otherwise. 5 years** Except, as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced **five years** from when the claim first accrued....See: Gabelli v Sec No.11-1274, 568 US (Feb 27 2013) "Taking away rights" can be a civil penalty subject to Statute of Limitations. The subject 70 claims were located 2005 and onward by the locators. The statue of limit ran out before Sept 1, 2012, the "taking". Later BLM invalid decision for Saltzman subject claims is **forfeiture** which is a penalty, to lose all his rights and interest in his personal property mining claims. The Phoenix BLM issue was BLM paper issue that was alleged filed by the locators when the claims were originally filed with the Phoenix BLM. That clearly would be available for 43 CFR regulations of BLM notice and cure, The 28 USC 2462 - 5 years would prevent the issue after 5 years of BLM/IBLA from declaring a claim invalid or void without giving notice and opportunity cure which is what the BLM/IBLA did years later and did not notice Saltzman or previous claim owners. The subject claims would always be available for BLM notice and cure the entire life of the claim until patenting.

**43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM.

BLM never legally notified the locators while they owned the subject claims. BLM never Notified Saltzman of any subject claim issues in through September 1, 2012, which is past the 5-year period since claims were located. BLM had to make that decision within 5 years from the subject claim's location date. The subject claims were past the Statute of Limit when the claims were taken by the **ACT 2012**. September 1, 2012. The claims were subject to BLM notice and cure during those 5 years. After 5 years. Statute of Limit, BLM cannot bring suit involving for forfeiture or penalty, rights and interest for Saltzman

subject claims. That issue is Moot. BLM decision was well after the 5 years Statute of limit. BLM still had various 43 CFRs with notice and opportunity to cure. BLM decision subject claims are invalid cannot be correct without the required notice and time to cure per 43 CFR regulations. It is a forfeiture or penalty of Saltzman personal property mining claims subject to the Statute of Limit of 5 years. The Phoenix BLM is **benefiting** on the BLM failure to notify the locators and eventually Saltzman. See: **Jim Pressley Case, IBLA 2017-187 -192 IBLA 102**. Pressley case, Phoenix BLM **mailed notices** to all locators 5 months from the claim's location date of an issue. This was **before** the first annual fee payment and **before** the claims transferred. Ultimately, Pressley claims were **forfeited** for not replying to the BLM Notice and opportunity. This was not done with the Saltzman subject claims. BLM waited years then declared subject claims invalid for a paper in the original locators filing. That issue was available for BLM notice and opportunity. See: **43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM. Saltzman subject claims was a simple fix that should have been done by BLM years ago. Saltzman invalid subject claim's ruling was a **penalty or a forfeiture**. Saltzman claims would be the same forfeited and subject to the penalty as the Pressley case. In the Pressley case, his claims were declared **forfeited** because Pressley did not respond. The Phoenix BLM Notified Pressley requesting information to cure the issue. Unlike the Pressley case BLM failed to Notice and Opportunity Saltzman, or the previous owners or the locators with the Saltzman 70 subject claims.

14      Page 14 Ln 13 -21 Claim validity issue. Even if, any issue that BLM could bring up at that stage was **curable** with BLM notice. The subject 70 claims were valid as of September 1, 2012. The proof is the BLM certified letter of November 2, 2012 **(Exhibit 1)** calling for more money approx. $101,000 more fee money on his subject claims that had **no past BLM issues from the location date.** Thus, the subject claims were valid by **Valid 1** at that point in time when the claim acreage was taken by **ACT 2012**. See: **43**

**CFR 3833.32 (d)** BLM will notify the claimant of record of any action it takes regarding a mining claim or site. The BLM November 2, 2012, certified letter **Exhibit 1**, proves the subject claims were valid by **Valid 1** at the time of the "taking" **ACT 2012**, Sept. 1, 2012, as the BLM November 2, 2012, certified letter shows **no other subject claim issues were pending.** That only leaves valid by **Valid 2** for actual mineral testing for Gold and Silver values contained in the claim which only need to be sufficient for the "prudent man" rule. Saltzman's subject claims far far exceed that.  Saltzman can produce gold and silver free.

**Only 3 reasons a BLM mining claim issue cannot be cured with BLM notice.**

**43 CFR 3833.91(a)** Defects or other problems that cannot be cured and therefore result in forfeiture of your mining claims, the only 3 reasons as follows:

Failing to record a mining claim in 90 days after you locate it.

Failing to pay location fee or initial maintenance fee within 90 days after locating it.

Failing to pay the annual maintenance fee on or before the due date.

BLM **failed to notify the locators** to correct **before** BLM transferred the subject claims to a new owner.   BLM **failed** to notify any subsequent current owner later during the entire life of the 70 subject claims. That non-notification and opportunity was unlawful. That fact allows this Court to **reverse** the BLM/IBLA decision of subject claims invalid which BLM/IBLA failed to follow their own 43 CFR regulations.  That BLM/IBLA failure to notify was **unlawful---arbitrary and capricious.**

**43 CFR 3830.93 (b)** If there is a defect in your compliance with a regulatory, but not a statutory, requirement, the defect is curable. You may correct curable defects when BLM gives you notice. If you fail to correct within the time BLM allows, you will forfeit your mining claim.

**43 CFR 3830.94 (a)(1)** When BLM determines that you have filed **any document** that is defective or under paid a fee or service charge, BLM will send you a notice to you by certified mail-return receipt at the address you gave on: (i) Your notice or certificate of location (iii) A valid transfer document filed with the BLM.

12

**43 CFR 3833.32 (d)** BLM will notify the claimant of record of any action it takes regarding a mining claim or site.

Phoenix BLM **Failed to follow their required 43 CFR regulations** and never Notified Saltzman the registered owner. BLM denied Saltzman Due Process. BLM invalid claim rulings were unlawful, arbitrary and capricious.

**15**        pg 18 Ln 9-11        A correction, Court jurisdiction is from judicial review proceeding under Administrative Procedure Act (APA) 5 U.S.C. 701 through 706.

**16**                                SUMMARY

**Saltzman subject 70 claims case is it BLM negligence or a BLM scheme**

The subject claim locators sell the 160 acre claims for thousands of dollars. BLM has no filing issues with the locators' claims. Locators had paid all BLM required fees.

BLM transfers the claims from the locators to a new owner for a BLM fee. BLM had No locator filing issues as BLM cannot collect fees on an invalid claim. Any locator filing issues would be with BLM notice corrected by the locators while they owned the claims and before the transfer and before approval of the BLM registered claim.  After the transfer BLM is **required** to **Notify and Opportunity** the current claim owner of any issues. How would the new owner know if an issue existed without BLM notification. BLM **failed** to follow their own regulations: 43 **CFR 3830.94 (a)(1)** Notice and Opportunity.  BLM never notified any of the claim owners with notice and opportunity before the "taking," ACT 2012, September 1, 2012. Eventually the registered claims get transferred to the latest claim owner, Saltzman. Saltzman paid the annual fees timely for years. BLM never sent notification of any mining claim issues on the subject claims throughout the life of the subject claims. The subject claims were taken by a new statute, ACT 2012. September 1, 2012, BLM had no pending issues on the subject claims at that time. The subject claims were all valid per **Valid 1.** November 2, 2012, BLM **confirmed** that by Certified Mail **(Exhibit 1)** There are no subject claims issues pending other than new claim fees raising the claim fees 800 percent or the taking of 140 acres of each 160 claim. The subject claims valid by **Valid 1** with no previous issues pending since location. About 3 years later after the "taking", when Saltzman **no longer**

13

**owned** the subject claims the BLM agreed to test the subject claims for **mineral values** contained with the Court of Federal Claims (CFC) at 2 claims per month and to pay Saltzman on a rolling basis taking nearly 4 years. BLM got a stay from the CFC and ultimately **never tested a single claim for mineral values** and declared all the subject claim invalid. BLM reneged from mineral testing. BLM claimed they were missing some paper from the original locators which was curable, **43 CFR 3830.94 (a)(1).** The locator and previous claim owners and lastly Saltzman were never notified of any subject claim issues per 43 CFR regulations. BLM keeps all the fee monies from the beginning location date on an invalid claim, the only refund is to the final owner simply replace the fees the final owner paid to BLM, not the purchasing cost of the claim, not the fees paid from the location date, fees paid by previous owners over the years from the location date. A great positive money flow for BLM on invalid claims with no enforceable responsibility from the government agency BLM/OHA/Dept of Interior---other than from a U.S. Federal District Court. Why would BLM ever want any mining claim owner to have a valid claim? The BLM/IBLA/DOJ have delayed this Saltzman subject claim case since 2012 till 2025 so far. 13 years over a piece of paper that was BLM responsibility to oversee when the subject claims were first located in 2005 and onward. That's what the Phoenix BLM required filing fees and required annual fees is for BLM supervision of claim filings and claim recordings and claim issues. BLM declaring Saltzman claims invalid ultimately took Saltzman Constitutional 5th Amendment rights to compensation of personal property for the ACT 2012. The BLM/IBLA was Arbitrary and Capricious and Unlawful with Saltzman subject claims.

**17**                              **CONCLUSION**

In about 2005 Saltzman in good faith bought United States BLM registered placer mining claims.   The subject claims had no BLM issues. Sept 1, 2012. The ACT 2012 took 140 acres of each 160-acre Saltzman subject personal property claims. Saltzman's Constitutional Right was entitled to compensation for the taking of his personal property via the 5th Amendment of the Constitution. 3 years after the "taking", BLM/IBLA indicate subject claims invalid, to avoid the expensive testing for claims

mineral content. BLM/IBLA decision on the subject claims was unlawful and arbitrary and capricious which this Federal District Court can reverse the BLM/IBLA invalid decision. The evidence of BLM/IBLA making bad and incorrect and unlawful decisions is **insurmountable** in Saltzman's subject claims.  The consistent no notification unlawful pattern continued throughout the life of the 70 subject claims for locators, former owners and eventually Saltzman as owner. Saltzman in good faith bought United States BLM registered mining claims. Later the U.S. Congress took Saltzman's private property mining claims via a new statute **ACT 2012**. 3 years later BLM/IBLA unlawfully ruled, never notifying, that none of the subject claims are valid. That was years after Saltzman didn't own them.  BLM **failed** to give the required Notified and Opportunity during the entire life of the subject claims. The BLM November 2. 2012, letter proves the claims were valid and were paid the normal fee, September 1, 2012, and now additional BLM fees are due or acreage "taking" on the valid claims due to acreage taking with a new statute **ACT 2012**.  This Court can **reverse** the BLM/IBLA invalid decision of the subject claims as BLM did not follow their **required** 43 CFR regulations, and their decisions were **not lawful** and were **arbitrary** and **capricious.**  The IBLA did a **shameful blunder** with their **rejection** of BLM was required to notify Saltzman.  The IBLA rejection itself should **reverse** the BLM/IBLA decision to 70 subject claims are valid. Your Honor, please do not dismiss this very important case. Thank You.

Respectfully submitted,    September   2 , 2025

Jon Saltzman Pro Se

P. O. Box 3737

Wickenburg AZ, 85358

jonsaltzman@msn.com

15

# Exhibit 1

# Proof BLM indicated claims valid by

# the Certified Letter

# 2pgs

Case 4:13-cv-01014-NBF   Document 1-7   Filed 12/23/13   Page 1 of 3



# United States Department of the Interior



## BUREAU OF LAND MANAGEMENT
Arizona State Office
One North Central Avenue, Suite 800
Phoenix, Arizona  85004-4427
www.blm.gov/az/
November 2, 2012

In Reply Refer To:
3800 (9310) AT
SEE ATTACHMENT

CERTIFIED MAIL – RETURN RECEIPT REQUEST 7012 2210 0000 8675 2162

NOTICE

SALTZMAN JON
PO BOX 3737
WICKENBURG, AZ  85358

This Notice Affects Those Claims
Shown in the Block Below.

SEE ATTACHMENT

### 2013 Maintenance Fees - Additional Fees Required

Your maintenance fee payment for the 2013 assessment year, in the amount of $140 per claim, for the placer claims listed above, has been received and is insufficient. **The total due on your claim(s) is: $$100,940.**

In accordance with the Consolidated Appropriations Act of 2012, Public Law 112-74 (125 Stat 1047), and FR44155-44158 (2012) Congress changed the way maintenance fees for placer mining claims are assessed. Instead of charging the maintenance fee on a per-claim basis, Congress stated that the fee, which is currently $140, will be assessed on each 20 acre parcel of a placer claim or portion thereof.

Insufficient payment of the annual maintenance fee for the 2013 assessment year is a curable defect. **Therefore you are required to do one of the following within 30 days of receipt of this notice or your claim(s) will be declared forfeited:** 1) submit additional fees of $140 per 20-acres or portion thereof based on the full acreage of the claim, or 2) amend the claim(s) to reduce the acres so a lesser fee is due and submit any additional fees due; or 3) relinquish the claim(s) in their entirety, in which case BLM will refund the maintenance fees you have already paid for the 2013 assessment year.

If you choose to amend the claims to reduce the acres, you must submit an amended location notice for each claim, with an accurate description and dimensions of the reduced claim, along with a map depicting the reduced claim, and a $10 processing fee per amendment. An amendment must also be recorded at the county. If the amended claim contains more than 20 acres, calculate the additional fees due and submit those fees with the amendment(s).

Please include your Arizona Mining Claim (AMC) serial number(s) and claim name(s) when submitting the additional fees, and note that you are paying additional fees due. If additional information is required, please contact Amy Thrower at 602-417-9334.

*Rebecca Heick*

Rebecca Heick
Group Administrator
Lands and Minerals

CERTIFICATE OF SERVICE

I certify that I mailed Plaintiff Saltzman Objection to Motion to Dismiss Third Amended Complaint, Case CV-25-00020 by U.S. Mail to:


Katherine R. Branch

Assistant United States Attorney

 40 North Central Ave., Suite 1800

Phoenix, AZ 85004-4449


Young A. Kang

U. S. Department of Justice.

 Environment Natural Resources Division

Natural Resources Section

P O Box 7611

Washington, DC 20044-7611


Jon Saltzman Pro Se    September    2    2025

P O Box 3737

Wickenburg AZ 85358

jonsaltzman@msn.com

16